151 So.2d 372 (1963)
Gloria DELESDERNIER, Wife of Paul MARCHAND
v.
K. K. MIAZZA, James H. Drury, R. Cornelius Smith and Louis C. Phillips.
No. 897.
Court of Appeal of Louisiana, Fourth Circuit.
January 7, 1963.
Rehearing Denied April 1, 1963.
*373 Luke A. Petrovich, Buras, for plaintiff and appellant.
H. Martin Hunley, Jr., and Lemle & Kelleher, New Orleans, for K. K. Miazza and James H. Drury, defendants and appellees.
Reuter, Reuter & Schott, Arthur C. Reuter, New Orleans, for Louis C. Phillips, defendant and appellee.
Charles E. Richards, New Orleans, for R. Cornelius Smith, defendant and appellee.
Before SAMUEL, JANVIER and TURNER, JJ.
HENRY F. TURNER, Judge pro tem.
The plaintiff appealed from a judgment of the lower court maintaining a plea of prematurity filed by all the defendants in this case. In her original and supplemental petitions plaintiff alleges that she employed the first three named defendant attorneys who were empowered under the terms of her contract to employ additional counsel at their expense, whereupon they employed the fourth named defendant. Under the terms of a written contract dated September 13, 1950, between plaintiff and the first three named defendants, they agreed to represent her in certain legal matters which are essentially as follows:
"Whereas, party of the first part is or may be the owner of certain rights and interests to property, movable and immovable, located in the Parishes of Orleans, Jefferson and Placquemines, State of Louisiana and elsewhere through inheritance in the succession of her paternal grandmother, Mrs. Jula Loga, wife of George W. Delesdernier, and may be entitled to certain rights and interests in properties, movable and immovable, through inheritance in the succession of her father, Chester O. Delesdernier, said properties being located in Florida and elsewhere, and whereas other parties are claiming the ownership and rights to properties belonging *374 to party of the first part, and it is necessary that the said party of the first part should take legal action against said claimants, or any of them or their assignees, vendees, or any other claimants, in order to have vindicated the rights of ownership of said party of the first part to said property.
"And the party of the first part declares that she does by these presents grant, bargain, sell, convey, transfer, assign, set over, abandon and deliver unto party of the second part, their heirs and assigns, a forty percent interest in and to all property, real and personal, movable and immovable, of whatever nature, kind and description recovered in the above described successions through the efforts of party of the second part.
"And the said parties declare that this transfer is made in consideration of the professional services rendered by the said party of the second part, and to be rendered by him in bringing whatever action or actions party of the second part may deem necessary or proper in order to secure judgment in favor of said party of the first part against any and all adverse claimants of said property and in vindication of the rights of the party of the first part."
This suit is predicated on the allegation that the attorneys neglected to properly represent her and protect her property rights, resulting in a loss to her of more than $2,000,000.
The record shows that after the defendants had not satisfied the plaintiff as to their progress and success in their representation of her, she obtained a release from them and employed other counsel. The other counsel filed four lawsuits, three in the Twenty-Fifth Judicial District Court for the Parish of Plaquemines and one in the U. S. District Court for the Southern District of Florida, in which plaintiff set forth the claims which she had employed the defendants to prosecute initially. These cases are now pending. For her cause of action against the defendants, she enumerates their alleged negligence and improper handling of her business as follows:
1. Failing to assert plaintiff's right of collation in the Succession of George W. Delesdernier, her grandfather, who died in 1952.
2. Allowing the appeal taken by defendants from a judgment against plaintiff in suit No. 2767 on the docket of the 25th Judicial District Court for the Parish of Plaquemines to be lost by inaction for five years in the Court of Appeal for the Parish of Orleans (now Fourth Circuit).
3. Failing to assert her rights as heir of her brothers, Chester and Warren Delesdernier.
4. Failing to attack tutorship proceedings in which plaintiff's mother was named her tutor in the Succession of Julia Loger Delesdernier on the basis of non-residence of minors in Plaquemines Parish where the succession and tutorship were opened and on the basis of the valuation of the minors' interest in the sale of the property which took place under court order in that succession.
5. Failing to attack a tax sale to plaintiff's grandfather, George W. Delesdernier, from Delesdernier Estate Incorporated.
6. Failing to assert her rights in the Succession of George O. Delesdernier, her uncle.
7. Failing to investigate plaintiff's interest in Jefferson Parish property inventoried in the succession of her grandmother, Julia Loger Delesdernier.
8. Failing to investigate properties omitted from inventories in the successions of Julia Loger Delesdernier, plaintiff's grandmother, George O.
*375 Delesdernier (her uncle) and George W. Delesdernier (her grandfather).
9. Failing to determine the whereabouts of certain shares of stock.
10. Failing to investigate plaintiff's interest in property in Plaquemines Parish which was not described.
11. Failing to prosecute plaintiff's interest in the succession of her father, Chester O. Delesdernier which was opened in 1924 in the State of Florida where he died.
In her four lawsuits now pending she has alleged substantially the same amounts as she now seeks in damages from these defendants because of the loss of such rights. In other words, her position in the suits now pending is that she has the rights which she claims in this action have been lost and for which she seeks damages from the defendants because of either a breach of contract or negligence amounting to malpractice, that is to say, tort. Her counsel throughout his brief appears to treat the case as one of damages because of a breach of contract. However, he appears to have some apprehension as to prescription. The lower court held that the cause of action in this case is premature until such time as the pending lawsuits are decided, and if the decisions in those cases bear out plaintiff's contention that her business has been improperly handled, then she would be entitled to assert her claim against these defendants. Her attorney argues that under such ruling the defendants could in no wise lose. With this we disagree. If after plaintiff's rights initially agreed to be championed by the defendants herein are shown to have existed and that these defendants by reason of inactivity or incompetence have caused certain rights so established to be irretrievably lost, on proof of same, defendants would be cast for such damages as she was able to show. These damages, of course, could be for the value of property lost by permitting prescription to run without taking adequate steps to prevent same or by permitting the property or assets of the successions involved to be dissipated, leaving her without recourse against the defendants in the other cases.
As to the prescription following the adjudication of plaintiff's rights in the four lawsuits now pending, the courts will not stand by and rule that her claim is premature today and prescribed tomorrow; we would apply the doctrine of contra non valentem agere nulla currit prescriptio.
There are many claims that could be filed under a contract and in tort; in our opinion this is one of those claims. If the suit is predicated upon a breach of contract, then, of course, prescription would be ten years. However, if it is predicated upon tort, then the prescription would be one year. See Don George, Inc. v. Paramount Pictures, D.C., 145 F.Supp. 523. Treating it as one predicated upon tort, we do not think that the one year would begin to run until the damages have been shown to exist. In the case of Griffin v. Drainage Commission of New Orleans, 110 La. 840, 34 So. 799, it was held that where the commission of a wrongful act is attended immediately by resulting damage, the date at which damage commences is the initial point for the running of the prescription of one year. In the case of Beauvais v. D. C. Hall Transport, Inc., La.App., 49 So.2d 44, the court held that in suits for damages occasioned by wrongful act, prescription commences to run where, in point of time, the damage follows the wrongful act not from the time the act was done, but from the date the damage was sustained in consequence of it. In the present case until it has been established that the defendants wrongfully permitted a loss to plaintiff, no damage can be shown. It is entirely possible that the defendants used their best judgment according to their undertaking and did all that was possible for the plaintiff. It is difficult for us to conceive of any lawyer that we have ever *376 known voluntarily abandoning or quitting on a piece of business involving more than $2,000,000, upon which they had a power of attorney coupled with an irrevocable interest in the amount of 40 percent as shown by the contract.
For the district court to have to try this case at this time would mean that it would have to try all of the issues involved in the other cases to determine whether or not the defendants had breached their contract or been guilty of actionable negligence to the detriment of the plaintiff herein. Even then his finding might be contrary to that finally decided in the four preceding cases. In oral argument counsel for plaintiff frankly admitted that for the district judge in this case to fix damages prior to adjudications in the pending cases, he would have to indulge in speculation of the wildest variety. He would simply have to reach into the air and pull out a figure with regard to each of the four cases. In one case involveda Florida case in the federal courtit is doubtful that the judge below would be conversant enough with the Florida law and procedure of that state to say whether or not any right claimed by plaintiff in that case had been lost by the actions of the defendants herein.
Another consideration in the case is that if plaintiff is successful in this case and should obtain judgment as prayed for and execute on same, it would not preclude her from continuing with the other four cases and collecting the same amount or a substantial part thereof in those cases, thereby unjustly enriching herself to that extent.
In the absence of a showing to the contrary, we presume that attorneys act in good faith and to the best of their professional ability in the interest of their clients and until such showing is made, we feel that the attorneys should have the benefit of that presumption and not be required to defend one lawsuit and in effect prosecute four others to exonerate themselves from a charge such as has been made in this case.
It is therefore our opinion that the judgment of the lower court is correct and is therefore affirmed.
Affirmed.

On Application for Rehearing
PER CURIAM.
An application for rehearing was filed by Kalford K. Miazza, one of the appellees, on the ground that, while the decree handed down is correct, the publication of the opinion without explanation may conceivably create some misunderstanding and impugn, his professional reputation as a lawyer.
He concedes that the decree is correct, but directs attention to the quotation in the opinion from the charges made by plaintiff. He also suggests that the record indicates that he had withdrawn as attorney for plaintiff and that plaintiff so conceded and he complains, too, that in the opinion we refer to the suit as one involving "loss of more than $2,000,000."
We quoted from the original petition merely to show that the plaintiff bases this suit on the identical charges which were the basis of the other suits against other parties which are still pending, and we had not the slightest intention of intimating that there is anything in the record at this time which indicates that any of the charges are well founded.
The suggestion that we should make note of the averment in the application for rehearing that the applicant had withdrawn from the cases referred to cannot be complied with for the reason that whether or not applicant had withdrawn is one of the facts upon which this suit may depend if and when it should ever come to trial.
The suggestion that the suit is not one involving $2,000,000 or more cannot be considered and all that we did in our original opinion was to state that that is the amount claimed by the plaintiff.
*377 The only question which we determined was that this suit cannot be proceded with until the other suits which plaintiff has brought against others are determined, and there is nothing in our opinion which, to any extent at all, can be construed as impugning the reputation of the applicant. "We repeat that the application cannot be granted since the applicant concedes the decree is correct.
Application for rehearing refused.