683 So.2d 912 (1996)
O. William REEDER, M.D.
v.
Bruce A. NORTH and Molony, North & Kewley.
No. 96-CA-165.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1996.
Rehearing Denied December 23, 1996.
*913 Arthur A. Lemann III, Arthur A. Lemann IV, New Orleans, for Plaintiff/Appellant.
David L. Colvin, Gretna, for Defendant/Appellee (Bruce A. North).
Daniel A. Rees, New Orleans, for Defendant/Appellee (The Home Insurance Company).
Before CANNELLA and DALEY, JJ., and RICHARD J. GARVEY, J. Pro Tem.
DALEY, Judge.
This is an appeal of a legal malpractice claim that was dismissed on an Exception of Prescription. Plaintiff, O. William Reeder, M.D., (Reeder) sued his former attorney, Bruce A. North, and the firm of Molony, North & Kewley, (North) for malpractice based on the attorneys' alleged failure to bring certain state law claims in a federal court proceeding resulting in the state law claims being barred by res judicata. For the reasons that follow, we reverse the trial court judgment granting the Exception of Prescription and remand for further proceedings.
Plaintiff hired defendants to represent him in an attempt to recover his investment in the "travel club," a fraudulent check kiting and Ponze scheme. On July 10, 1989 North filed a suit on behalf of Reeder in Federal District Court naming Lynn Paul Martin, individually and d/b/a LPM Enterprises, the Succession of Michael B. Palmer and the Bank of LaPlace as defendants. The complaint alleged violations of Federal Securities Law and the Louisiana Blue Sky Law. The case brought in Federal District Court was dismissed with prejudice in 1990.
Subsequently, in May of 1990 North filed a petition in State District Court and served the petition on the travel club defendants. In December of 1990 the petition was amended to allege claims pursuant to the Louisiana Blue Sky Law, negligence, negligent misrepresentation, breach of fiduciary, breach of contract and negligent ignorance. All allegations set forth in the state petition allegedly involved the same occurrence and the identical defendants as those dismissed in the federal suit.
The travel club defendants filed Exceptions of No Cause of Action and Res Judicata to the state court suit. The Exceptions of No Cause of Action and Res Judicata were granted by the trial court on April 26, 1991, dismissing plaintiff's suit with prejudice. Plaintiff appealed. The State Fifth Circuit Court of Appeal affirmed the trial court's dismissal in part and reversed in part; affirming the trial court judgment granting the Exceptions of No Cause of Action and Res Judicata but annulling the dismissal of the suit with prejudice[1] and remanding the case to the trial court to give plaintiff an opportunity to amend his petition to state a contractual cause of action against defendant, Palmer.
Writs to the Louisiana Supreme Court were taken and the Louisiana Supreme Court reversed the Court of Appeal on September 3, 1993[2] reinstating the district court's dismissal with prejudice, holding under *914 the doctrine of res judicata that the Federal District Court's final judgment barred all subsequent claims, federal or state, and that an amendment to plaintiff's petition was not permissible. The Louisiana Supreme Court denied a rehearing request on October 7, 1993. An Application for Writ of Certiorari was denied by the United States Supreme Court on February 28, 1994.[3]
Thereafter, on September 15, 1994 Reeder filed the instant malpractice action against North alleging that North was negligent by not pleading all viable state causes of action in the Federal District Court petition. Defendant North filed an Exception of Prescription and/or Peremption alleging under the provisions of LSA-R.S. 9:5605 that Reeder's legal malpractice action was barred because suit was not filed within one year of the discovery of the malpractice or within three years of the date of the alleged act of malpractice, regardless of when it was discovered. Defendants also argue that as the federal complaint was filed July 10, 1989 and the federal appeal became final on September 27, 1990, this action filed September 15, 1994 was clearly filed more than three years after the alleged act, omission or neglect occurred. The trial court agreed and granted the exception.
Plaintiff argues the continuing representation rule applies and that the cause of action did not accrue until the United States Supreme Court denied the application for Writ of Certiorari on February 28, 1994. Therefore, this suit, filed on September 15, 1994, is timely.
LSA-R.S. 9:5605 governs the time to file legal malpractice claims and provides:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive period shall be governed exclusively by this Section.
D. The provisions of this Section shall apply to all persons whether or not *915 infirm or under disability of any kind and including minors and interdicts.
E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
In determining when the claim against an attorney comes into existence, and hence when prescription or peremption begins to run, we must determine when the facts ripened into a viable cause of action sufficient to support a lawsuit. The elements of a cause of action for damages based on negligence are fault, causation and damages. Bunge Corp. v. GATX, 557 So.2d 1376 (La. 1990); Owens v. Martin, 449 So.2d 448 (La. 1984); Jure v. Barker, 619 So.2d 717 (La. App. 4th Cir.1993). Fault alone is not sufficient. Damages alone are not sufficient. Both are needed (along with a causal link between the negligent act and the damage complained of) in order for a cause of action to exist. Bunge, supra; Owens, supra. However, it is not required that all, or even a greater part, of the damage be sustained before a cause of action for malpractice arises. Landmark Savings Bank v. Greenwald, 582 So.2d 943 (La.App. 2 Cir.1991).
In order to decide this case, we must determine the date in which the actions of counsel gave rise to a cause of action in malpractice. When the act or neglect occurs which gives rise to a legal malpractice suit is often a difficult question to answer. The alleged act here is the failure to include the state cause of action in a suit brought in Federal District Court which resulted in the state law claims being barred. The language of R.S. 9:5605 directs our analysis to the "date of the alleged act, omission or neglect", i.e. when the state law claims were determined to be barred.
In this case the State District Court found the underlying state law action was precluded by res judicata because the petition filed in Federal District Court against the same operative facts did not assert all possible causes of action. Had the State District Court judgment become definitive a malpractice cause of action could have been asserted within one year of this date. However, the judgment was appealed and the appellate court remanded the claim to allow plaintiff time to amend his pleadings to assert a contractual cause of action. When the appellate court ruled that the plaintiff could amend to assert viable claims the omission complained of was rectified and a viable malpractice cause of action could not have been asserted. The appellate decision, however, was further appealed and the Louisiana Supreme Court ruled that the state law claim was in fact barred. Upon denial of Writs of Certiorari by the United States Supreme Court on February 28, 1994, the judgment barring the State action became definitive. Before that date the law controlling interpretation of the new Res Judicata statute was still being interpreted and subject to legal debate.
Until this definitive judgment, there was no notice or knowledge of neglect committed by the attorneys and any cause of action available to their clients was premature. Had plaintiff instituted his action prior to March 1994, the date when the state claims were finally dismissed, the malpractice petition would have been subject to an exception of prematurity. We agree with our brethren of the Fourth Circuit in Jure, supra, wherein the court reasoned:
The prescription statute for legal malpractice actions, LSA-R.S. 9:5605, does not purport to alter the rule ... that a cause of action for legal malpractice does not exist, with the necessary consequence that prescription cannot begin running, unless and until the client actually has suffered some damage. The statute specifies a one year prescriptive period for legal malpractice actions and limits tolling based upon the client's ignorance of the attorney's fault to three years. To stretch the statute further, to cause prescription to begin running on a cause of action that does not yet exist, with the consequence that a cause of action could be prescribed before it exists, would be an absurdity that the statute's text does not call for and which we cannot conceive to be intended by the legislature. Thus, the one year prescriptive period of the statute begins running no sooner than the cause of action for legal malpractice comes into existence. In the present case, the one year prescriptive period *916 will begin to run upon the conclusion of Jure's appeal in the medical malpractice action. Jure, supra at p. 719.
Throughout our jurisprudence, legal malpractice claims did not ripen until the attorney-client relationship was terminated. If a malpractice suit was filed against an attorney while he continued to represent the client on the same subject matter originally undertaken, the suit was premature. Id. This well reasoned jurisprudential rule was sanctioned to allow the attorney handling a claim to zealously represent his client in an attempt to resolve the dispute in favor of the client. If the claim was resolved in favor of the client, there would be no malpractice claim. If the claim was resolved adversely to the client, the client could then decide whether to pursue a malpractice action against the attorney. This rule was particularly useful in cases where the issues in the underlying claim were not clear cut but subject to interpretation by the courts. The eventual outcome would then have a direct bearing on whether the attorney was negligent in his representation of the client. It would be patently unfair to both the litigant and the attorney to require a client to pursue a malpractice claim against his attorney while the underlying claim remained active, was being prosecuted by the same attorney and was subject to reversal in favor of the client by a reviewing court.
The language of R.S. 9:5605 is essentially identical to the language of the medical malpractice prescription statute, R.S. 9:5628. Cases interpreting the medical malpractice statute have universally held that a suit must be filed within three years of the "act, omission or neglect" which gave rise to the alleged malpractice or the right of action is extinguished. Taylor v. Giddens, 618 So.2d 834 (La.1993); Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986). However, in Dunn v. North Community Hospital, 545 So.2d 1267 (La.App. 2d Cir.1989), the Second Circuit recognized an exception to the three year peremptive rule when the doctor intentionally and successfully conceals his malpractice until it is too late to bring suit. The court, at page 1270, stated "... rather than applying the doctrine of contra non valentum, such a case could be resolved by holding the doctor's actions estopped him from raising the exception of prescription."
That same rationale is applicable here. The legal profession is one of service. Lawyers are obligated to serve their clients in the best way they know how with all of the available tools and resources that can be mustered. We agree with the Second Circuit that a defendant is estopped from raising the exception of prescription if his actions conceal the malpractice until it is too late to bring suit. While there exists an ongoing, continuous and dependent relationship between the client and the attorney and the attorney is seeking to rectify the alleged act of malpractice, the malpractice action is premature. See Lima v. Schmidt, 595 So.2d 624 (La.1992). The attorney's continued representation of the client effectively induces the plaintiff-client to delay filing of a legal malpractice suit. This type of delay has not been allowed to be used by the attorney to defeat the malpractice action. Succession of Smith v. Kavanaugh, 565 So.2d 990 (La.App. 1 Cir.1990). The continuous representation rule has been applied to prevent an injustice to the client during the existence of an ongoing, continuous, developing and dependent attorney-client relationship. See Lima, supra; Braud, supra; Malone v. Wright, 525 So.2d 13 (La.App. 3 Cir.1988). If the client is mandated to file suit against his attorney for malpractice before a judgment in the suit in which the alleged malpractice arose became definitive, he would be placed in the untenable position of asserting on the one hand that the judgments were valid and on the other hand that they were invalid. Braud v. New England Ins. Co., 562 So.2d 1116 (La.App. 4th Cir.1990). This court cannot condone such a result.
While the attorney-client relationship is in existence and the attorney is actively attempting to remedy the alleged malpractice until the judgment giving rise to the malpractice claim becomes definitive, a legal malpractice claim does not ripen into a cause of action. Because appellate courts can disagree in the application of the law giving rise to the legal malpractice, it is only when the judgment giving rise to the malpractice becomes *917 definitive that it is jurisprudentially clear that an act or omission has occurred and that a malpractice action exists. Under this analysis the cause of action asserted has neither prescribed, since the pleadings were filed within one year of the date the judgment became definitive, nor has the cause of action been preempted since it is within three years of that date.
Accordingly, for the reasons assigned we reverse the trial court's judgment granting defendants' Exception of Prescription and remand for further proceedings. All costs of this appeal to be borne by defendant/appellee.
REVERSED AND REMANDED.
NOTES
[1] Reeder v. Succession of Palmer, 604 So.2d 1070 (La.App. 5th Cir.1992)
[2] Reeder v. Succession of Palmer, 623 So.2d 1268 (La.1993)
[3] Reeder v. Succession of Palmer, 510 U.S. 1165, 114 S.Ct. 1191, 127 L.Ed.2d 541 (1994).