701 So.2d 1291 (1997)
O. William REEDER, M.D.
v.
Bruce A. NORTH and Molony, North & Kewley.
No. 97-C-0239.
Supreme Court of Louisiana.
October 21, 1997.
Dissenting Opinion December 9, 1997.
*1293 David L. Colvin, Gretna, Stanhop Bayne-Jones Denegre, New Orleans, for Applicant.
Arthur A. Lemann, IV, Jefferson, Daniel A. Rees, New Orleans, for Respondent.
William E. Wright, Jr., Nancy J. Marshall, Jonathan M. Pierce, New Orleans, for Coregis Insurance Group, Amicus Curiae.
Dissenting Opinion of Justice Johnson December 9, 1997.
VICTORY, Justice.
We granted this writ to determine whether the court of appeal was correct in holding that La. R.S. 9:5605 did not perempt plaintiff's legal malpractice suit even though plaintiff filed suit more than three years after the date of the alleged negligent act. After reviewing the record and the applicable law, we hold that the strict wording of La. R.S. 9:5605 provides that plaintiff's legal malpractice suit is perempted; however, we remand the case to the trial court to allow plaintiff to amend and supplement his petition.

FACTS AND PROCEDURAL HISTORY
On July 10, 1989, Bruce A. North ("North"), as attorney for William Reeder, Jr. ("Reeder"), filed a complaint in the United States District Court of the Eastern District of Louisiana against the Succession of Michael B. Palmer, Lynn Paul Martin, and the Bank of LaPlace. The complaint alleged various violations of federal and state securities laws resulting from a fraudulent check kiting and Ponzi scheme allegedly perpetrated by Martin and facilitated by Palmer and the Bank of LaPlace resulting in damages to Reeder. The district court dismissed the complaint with prejudice in favor of the defendants. Reeder v. Succession of Palmer, 736 F.Supp. 128 (E.D.La.1990). The United States Court of Appeals for the Fifth Circuit affirmed the dismissal on September 27, 1990. Reeder v. Palmer, 917 F.2d 560 (5th Cir.1990). In May of 1990, North filed a petition in state court on behalf of Reeder against the same defendants based on the same course of conduct alleging negligence, negligent misrepresentation, breach of fiduciary duty, breach of contract, and violations of the Louisiana Blue Sky Law. On April 26, 1991, the trial court sustained defendants' exceptions of no cause of action and res judicata and dismissed the case. On September 16, 1992, the Louisiana Court of Appeal for the Fifth Circuit affirmed in part and reversed in part, holding that res judicata barred further claims based on state securities *1294 law, but did not bar further claims against Palmer that were not included in the federal complaint. Reeder v. Succession of Palmer, 604 So.2d 1070 (La.App. 5th Cir. 1992). This Court reversed that ruling on September 3, 1993, holding that because the federal court had pendant jurisdiction over all of Reeder's state law claims against Palmer, the federal judgment precluded the omitted state law claims. Reeder v. Succession of Palmer, 623 So.2d 1268 (La.1993). Rehearing was denied on October 7, 1993. The U.S. Supreme Court denied certiorari on February 28, 1994. Reeder v. Succession of Palmer, 510 U.S. 1165, 114 S.Ct. 1191, 127 L.Ed.2d 541 (1994). North continued to represent Reeder throughout these proceedings.
On September 15, 1994, Reeder filed the present legal malpractice suit against North and his law firm, alleging the following:
XIV.
Because North failed to raise all of Petitioner's claims in the original federal complaint, Petitioner is now barred from recovering under any theory the damages he sustained as a result of his investments in the fraudulent check kiting and Ponzi scheme.
XVI.
Petitioner also avers that the res judicata bar on his subsequent state claims was caused solely by the negligence of North and Malony, North & Kewley in not properly raising all of the claims arising out of the same transaction or occurrence in the federal complaint.
North filed an exception claiming that Reeder's malpractice action was perempted under La.R.S. 9:5605. In his opposition memorandum, Reeder claimed that La. R.S. 9:5605 was unconstitutional. The trial court granted North's exception and dismissed Reeder's suit. On November 3, 1995, Reeder appealed to the Louisiana Court of Appeal for the Fifth Circuit. On April 22, 1996, Reeder filed a motion to stay the appeal and to remand the case back to the trial court in order to specifically plead that the application of La. R.S. 9:5605 would be unconstitutional as applied. Without acting on the motion, the court of appeal reversed the judgment of the trial court and remanded the case for a trial on the merits. Reeder v. North, 96-165 (La.App. 5th Cir. 11/14/96), 683 So.2d 912.
North filed a writ application in this Court alleging two assignments of error: (1) that the appellate court ignored the express provisions of La. R.S. 9:5605 that the peremptive period cannot be renounced, interrupted, or suspended by applying a rule of suspension; and (2) that the appellate court erroneously held that the three-year peremptive period commences only when a cause of action has accrued, rather than on the date of the act, omission or neglect. We granted North's writ to consider these assignments of error. Reeder v. North, 97-0239 (La.3/27/97), 692 So.2d 377.

DISCUSSION
On July 10, 1989, when North filed the initial suit in federal court wherein he allegedly negligently failed to include all causes of action, the prescriptive period for legal malpractice claims was governed by La. C.C. art. 3492, which provides that delictual actions are subject to a liberative prescription of one year commencing to run from the day injury or damage is sustained. Braud v. New England Ins. Co., 576 So.2d 466, 468 (La.1991). The time limits to file legal malpractice actions are now contained in La. R.S. 9:5605, enacted in 1990 and amended in 1992, which provides in part:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged *1295 act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive period shall be governed exclusively by this Section.
The court of appeal found, in spite of the clear wording of this statute, that "[i]n determining when the claim against an attorney comes into existence, and hence when prescription or peremption begins to run, we must determine when the facts ripened into a viable cause of action sufficient to support a lawsuit." 683 So.2d at 915. The court of appeal held that "[w]hile the attorney-client relationship is in existence and the attorney is actively attempting to remedy the alleged malpractice until the judgment giving rise to the malpractice claim becomes definitive, a legal malpractice claim does not ripen into a cause of action." Id. at 916. The court found that this did not occur until the U.S. Supreme Court denied certiorari on February 28, 1994. Thus, the court of appeal found that Reeder's malpractice suit was timely filed on September 15, 1994.
We cannot agree with the court of appeal's reasoning. The Legislature was particularly clear in wording La. R.S. 9:5605 so as to leave no doubt as to its intent. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9. As directed by this Civil Code article, we must apply the statute as written.
La. R.S. 9:5605A expressly provides that all legal malpractice actions must be brought "within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered;...." The Legislature put a three-year limit on these actions by further stating that "however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect." La. R.S. 9:5605A.
The "act, omission, or neglect" complained of in Reeder's petition is North's failure to include all state law claims in his federal court complaint. The complaint was filed on July 10, 1989. La. R.S. 9:5605A was enacted on September 7, 1990, after the negligent act. However, there is no doubt that the three-year peremptive period retroactively applies to Reeder because the Legislature provided that "[t]he provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred." La. R.S. 9:5605B. Further, La. R.S. 9:5605B states that "with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed... on or before September 7, 1993, without regard to the date of the discovery of the alleged act, omission, or neglect." La. R.S. 9:5605B.
*1296 Thus, under the clear wording of the statute, the court of appeal was wrong in holding that the peremptive period did not begin to run until the "facts ripened into a viable cause of action sufficient to support a lawsuit," i.e., the date the U.S. Supreme Court denied certiorari. Because the negligent act occurred before September 7, 1990, Reeder had until September 7, 1993 to file the malpractice action, "without regard to the date of the discovery of the alleged act, omission, or neglect."
We recognize the perceived inequities of this statute. Had Reeder filed his malpractice suit while his state court action against Palmer was proceeding through the appellate process, he argues that his malpractice claim may have been dismissed as premature. But see Braud v. New England Ins. Co., supra.[1] In fact, until September 3, 1993 when this Court reversed the appellate court and held that all of Reeder's claims were barred by the doctrine of res judicata, Reeder argues that he had no malpractice claim because the state appellate court had ruled in his favor, allowing him to bring his state law claims against Palmer. Rehearing was denied on October 7, 1993 and the U.S. Supreme Court denied certiorari on February 24, 1994; in the meantime, Reeder's malpractice claim was perempted under La. R.S. 9:5605 on September 7,1993.
While the terms of the legal malpractice statute of limitations statute may seem unfair in that a person's claim may be extinguished before he realizes the full extent of his damages, the enactment of such a statute of limitations is exclusively a legislative prerogative. La. R.S. 9:5605 is analogous to the medical malpractice statute of limitations wherein a person's cause of action may prescribe before he even knows he has a cause of action because of the latency period of his condition.[2] Nevertheless, we have held that the three-year medical malpractice limitations period begins to run on the date of the alleged act, omission, or neglect, reasoning that:
Statutes of limitation are exclusively a legislative prerogative. In setting a statute of limitation, a legislature does not eliminate the remedy for a civil wrong; it makes a legislative determination that after a certain period of time no cause of action can arise. Until the time that a cause of action vests, a legislature has the power to create new rights and abolish old ones. Dunn v. Felt, 379 A.2d 1140, 1141 (Del.Super.1977). In finding that the right to recover in tort is not a fundamental right, our court has noted that "[w]here access to the judicial process is not essential to the exercise of a fundamental constitutional right, the legislature is free to allocate access to the judicial machinery on any system or classification which is not totally arbitrary." Bazley v. Tortorich, *1297 397 So.2d 475, 485 (La.1981); Everett v. Goldman, 359 So.2d 1256 (La.1978).
Crier v. Whitecloud, 496 So.2d 305, 310 (La. 1986) (on rehearing); see also, Whitnell v. Silverman, 95-0112 (La.12/6/96), 686 So.2d 23.
The legal malpractice statute of limitations is even more strongly worded than the medical malpractice statute of limitations in that La. R.S. 9:5605 expressly states that the period is "peremptive" and "in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended." La. R.S. 9:5605B.[3] Therefore, there is no doubt that the Legislature intended that three years after the "act, omission, or neglect," the cause of action is extinguished, regardless of when the negligence is discovered and regardless of whether a malpractice action may be brought within that three-year period. The Legislature was aware of the pitfalls in this statute but decided, within its prerogative, to put a three-year absolute limit on a person's right to sue for legal malpractice, just as it would be within its prerogative to not allow legal malpractice actions at all. See May 29, 1990 Minutes of the Civil Law and Procedure Committee of the Louisiana House of Representatives, House Bill No. 1338 (John deGravelles, from the Louisiana Trial Lawyers Association testified that the LTLA opposed any bill that provides a three-year peremptive period because it could extinguish a cause of action before it arises and was thus unfair and raised basis constitutional questions. Nevertheless, the Bill was reported favorably by the Committee by a unanimous vote.). Thus, while a three-year peremptive period may not be particularly generous, "[i]t is not our role to consider the policy or the wisdom of the [Legislature] in adopting [t]he statute. It is our province to determine only the applicability, legality and constitutionality of the [statute]." Chamberlain v. State, Through DOTD, 624 So.2d 874, 879 (La.1993) (citing City of New Orleans v. Scramuzza, 507 So.2d 215, 219 (La.1987) (collecting cases); Board of Commissioners of Orleans Levee District v. Dept. of Natural Resources, 496 So.2d 281, 298, n. 5 (La.1986)).
The court of appeal also erred in holding that the peremptive period of La. R.S. 9:5605 was, in effect, suspended during the period in which North continued to represent Reeder in trying to enforce Reeder's claims against Palmer in state court. North's representation of Reeder continued from the time he filed the first suit in federal court in July of 1989, until the U.S. Supreme Court denied certiorari on February 28, 1994. Relying on our earlier case of Lima v. Schmidt, 595 So.2d 624 (La.1992), the court of appeal held that "[w]hile there exists an ongoing, continuous and dependent relationship between the client and the attorney and the attorney is seeking to rectify the alleged act of malpractice, the malpractice action is premature." 683 So.2d at 916.
The court of appeal's reliance on Lima v. Schmidt is misplaced. Lima is a legal malpractice case where the act of negligence took place in June of 1983 and the negligent attorney continued to assure the plaintiffs up until January of 1988 that he was attempting to return the plaintiffs "to the same position they would have enjoyed" had he not acted negligently. The plaintiffs filed a legal malpractice action against the attorney in November of 1988. Both the negligent act occurred and the malpractice suit was filed prior to the enactment of La. R.S. 9:5605 in 1990, so this Court applied the one-year prescriptive period of La. C.C. art. 3492. Because Civil Code Article 3492 is a prescriptive period, this Court held that the period was suspended "during the attorney's continuous representation of the client regarding the specific subject matter in which the alleged wrongful act or omission occurred." 595 So.2d at 630 (citing Braud v. New England Insurance Co., supra at 468). We applied the "continuous representation rule" because Article 3492 provides a prescriptive period, rather than a peremptive period. As we stated in Lima, the "continuous *1298 representation rule" is a "suspension principle... based on the third application of contra non valentem, which suspends prescription when the debtor has done some act effectually to prevent the creditor from availing himself of his cause of action." 595 So.2d at 630 (cites omitted).
As a suspension principle based on contra non valentem,[4] the "continuous representation rule" cannot apply to peremptive periods. This is clear from the wording of La. R.S. 9:5605 ("[t]he one-year and three-year periods of limitations ... are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended") and of Civil Code article 3461 ("[p]eremption may not be renounced, interrupted, or suspended.") In addition, this Court has distinguished prescription from peremption in that contra non valentum does not apply to peremption:
Peremption differs from prescription in several respects. Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation (La. Civ.Code art. 1762(1)); peremption, however, extinguishes or destroys the right (La. Civ.Code art. 3458). Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as contra non valentem are not applicable. As an inchoate right, prescription, on the other hand, may be renounced, interrupted, or suspended; and contra non valentem applies an exception to the statutory prescription period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues.
Hebert v. Doctors Memorial Hosp., supra at 723. Thus, the court of appeal erroneously applied the "continuous representation rule" to suspend the peremptive statute of limitations period of La. R.S. 9:5605.
The court of appeal also erred in relying on the following reasoning of the appellate court in Braud v. New England Ins. Co.:
If the client is mandated to file suit against his attorney for malpractice before a judgment in the suit in which the alleged malpractice arose became definitive, he would be placed in the untenable position of asserting on the one hand that the judgments were valid and on the other hand that they were invalid.
683 So.2d at 916 (citing Braud v. New England Ins. Co., 562 So.2d 1116 (La.App. 4th Cir.1990)). This holding by the Fourth Circuit in Braud was specifically rejected by this Court on appeal. We held because parties are frequently required to maintain alternative, inconsistent and even mutually exclusive positions, the prescriptive period was not suspended while the negligent attorney was still trying to represent the client on the underlying claim. Braud, 576 So.2d at 469.[5] Thus, we agree with both of defendant's assignments of error and hold that the three-year peremptive period of La. R.S. 9:5606 begins to run on the date of the act, omission, *1299 or neglect and cannot be suspended by the "continuous representation rule."
In his brief to this Court, Reeder offers additional reasons why he should be allowed to bring this legal malpractice action. He alleges that, if we hold, as we do, that the peremptive period began to run on July 10, 1989 according to the allegations of plaintiff's petition, then he had a vested property right that may not be constitutionally divested through the retroactive application of La. R.S. 9:5605. See Segura v. Frank, 630 So.2d 714 (La.1994); Cole v. Celotex, 599 So.2d 1058 (La.1992); Lott v. Haley, 370 So.2d 521 (La.1979). He also alleges that La. R.S. 9:5605 is unconstitutional in that it violates the open courts doctrine of La. Const. art. I, § 22. However, although he has tried, Reeder did not specifically plead the constitutionality of La. R.S. 9:5605. As we explained in Vallo v. Gayle Oil Co., Inc.:
The long-standing jurisprudential rule of law is: a statute must first be questioned in the trial court, not the appellate courts, and the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized.
The pleadings allowed in civil actions are petitions, exceptions, written motions and answers. Therefore, when the unconstitutionality of a statute is specifically pled, the claim must be raised in a petition (the original petition, an amended and supplemental petition or a petition in an incidental demand), an exception, a motion or an answer. It cannot be raised in a memorandum, opposition or brief as those documents do not constitute pleadings.
Vallo v. Gayle Oil Co., Inc., 94-1238 (La.11/30/94), 646 So.2d 859, 864-865; see also Hillman v. Akins, 93-0631 (La.1/14/94), 631 So.2d 1, 4 (plaintiff first raised constitutionality of medical malpractice statute in opposition memorandum to defendant's exception).
Reeder first raised the unconstitutionality of the statute in an opposition memorandum to North's exception of prescription/peremption in the trial court. After a hearing, the trial court nonetheless held that Reeder's action was perempted. When Reeder appealed this ruling to the Fifth Circuit, he also filed a motion to stay the appeal and remand the matter to the trial court so that he could amend and supplement his petition to specifically plead the unconstitutionality of the statute. Without ruling on this motion, the Fifth Circuit reversed the trial court and held that Reeder's action was not perempted and remanded the matter for trial. Therefore, Reeder did not specifically plead the matter in trial court and was not allowed to do so by the appellate court.[6]
However, the law takes a liberal approach toward allowing amended pleadings in order to promote the interests of justice. Whitnell v. Menville, 540 So.2d 304, 309 (La. 1989). La.Code of Civil Procedure Article 934 provides as follows:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.
We have held that "if the new allegations raise the possibility that the claim is not prescribed, even if the ultimate outcome of the prescription issue, once the petition is amended, is uncertain," then opportunity to amend should be allowed. Id. (cites omitted). Thus, while it is uncertain whether Reeder's new assertions will be sufficient to overcome a peremptory exception of peremption, we will allow Reeder time to amend his petition in the trial court.

*1300 DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the judgment of the trial court sustaining the exception of peremption is reinstated; however, the case is remanded to the trial court to allow plaintiff time to amend and supplement his petition.
REVERSED; JUDGMENT OF TRIAL COURT REINSTATED; REMANDED.
LEMMON, J., not on panel. Rule IV, Part 2,§3.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, Justice, dissenting.
I agree with the holding of the Court of Appeal which reasoned if a client is required to file suit against his attorney while the suit is being litigated and before a judgment is definitive, the client is placed in the untenable position of asserting that a judgment is both valid and invalid.
To follow the reasoning of the majority would lead to absurd results. An attorney need only litigate a claim past the three (3) year preemptive period to avoid all consequences of his malpractice. In my mind, this cause of action did not ripen into a legal malpractice claim until February 28, 1994 when all legal avenues were exhausted.
NOTES
[1] In Braud, an attorney represented his client and got a default judgment against Citicorp for $4,000,000.00. Citicorp filed a nullity action in federal court attacking the validity of the default judgment. The client was then forced to settle with Citicorp for $72,000.00. After the client sued his former attorney who obtained the deficient default judgment for malpractice, the attorney filed an exception of prescription because the action was filed more than one year after the nullity action was filed. The appellate court reversed, holding that prescription did not begin to run until the nullity suit was concluded. This Court held that "[a]ny appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which a client may sue." 576 So.2d at 468. This Court found that the client "sustained appreciable and actual harm when the validity of his right or asset was attacked by a third party because of the alleged negligence of his former attorney and he was compelled to incur and pay attorney's fees, legal costs and expenditures. Accordingly, [the client's] cause of action against [the attorney] accrued the day Citicorp filed suit against [the client] to annul his $4,000,000 judgment against the corporation." Id. at 469.
[2] La. R.S. 9:5628 provides:

A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
[3] We have held that the medical malpractice statute of limitations period is prescriptive rather than peremptive, with the qualification that the discovery rule is expressly made inapplicable after three years from the act, omission or neglect. Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 724 (La.1986).
[4] Contra non valentem is a judicially-created doctrine which has been applied to prevent the running of prescription in four distinct situations:

(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
(2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;
(4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Plaquemines Parish Commission Council v. Delta Development Co., 502 So.2d 1034 (La.1987); Corsey v. State Through Dept. of Corrections, 375 So.2d 1319 (La. 1979).
[5] The court of appeal also erroneously relied on the Fourth Circuit's opinion in Jure v. Barker, 619 So.2d 717 (La.App. 4th Cir. 1993). To the extent that Jure held that the peremptive period of La. R.S. 9:5606 does not begin to run until the conclusion of an appeal in the underlying action and that La. R.S. 9:5606 does not displace the "continuous representation rule" of Lima v. Schmidt, Jure is overruled.
[6] In addition, La. R.S. 13:4448 provides as follows:

Prior to adjudicating the constitutionality of a statute of the State of Louisiana, the courts of appeal and the Supreme Court of Louisiana shall notify the attorney general of the proceeding and afford him an opportunity to be heard. The notice shall be made by certified mail. No judgment shall be rendered without compliance with the provisions of this Section; provided where the attorney general was not notified of the proceeding, the court shall hold adjudication of the case open pending notification of the attorney general as required herein.